UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JASON H.,

Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

**DECISION AND ORDER**

6:24-CV-06517 EAW

## INTRODUCTION

Represented by counsel, Plaintiff Jason H. ("Plaintiff") brings this action pursuant to Title II of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying his applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Dkt. 5; Dkt. 9), and Plaintiff's reply (Dkt. 10). For the reasons discussed below, Plaintiff's motion (Dkt. 5) is granted, the Commissioner's motion (Dkt. 9) is denied, and the matter is remanded to the Commissioner for further proceedings consistent with this Decision and Order.

**BACKGROUND**

Plaintiff protectively filed his applications for DIB and SSI on August 4, 2016. (Dkt 3 at 438-43, 444-45).[1] In his applications, Plaintiff alleged disability beginning on September 1, 2014. (*Id.* at 438, 444). Plaintiff's applications were initially denied on September 7, 2016. (*Id.* at 188-96, 197-205). A hearing was held before administrative law judge ("ALJ") Connor O'Brien on January 30 and June 3, 2019. (*Id.* at 103-45, 146-87). On September 25, 2019, the ALJ issued an unfavorable decision. (*Id.* at 211-21). Plaintiff requested Appeals Council review, and his request was granted on September 9, 2020. (*Id.* at 228-33). Plaintiff's case was remanded for another hearing and a new decision. (*Id.*).

A second hearing was held before the ALJ on March 31, 2021. (*Id.* at 54-102). On the same date, Plaintiff amended his alleged onset date to February 8, 2018. (*Id.* at 483). On August 4, 2021, the ALJ issued an unfavorable decision. (*Id.* at 33-44). Plaintiff requested Appeals Council review; his request was denied on September 15, 2022, making the ALJ's determination the Commissioner's final decision. (*Id.* at 10-13).

Plaintiff appealed his case to the United States District Court for the Western District of New York, and on June 2, 2023, the parties stipulated to remand the case for

[1] When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

further administrative proceedings. (Dkt. 3-1 at 114). The Appeals Council remanded the case to the ALJ on August 18, 2023. (*Id.* at 121-26).

A third hearing was held before ALJ Brian Kane on March 14, 2024. (*Id*. at 43-84). On April 29, 2024, the ALJ issued an unfavorable decision. (*Id*. at 18-31). This action followed.

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citation modified); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citation modified). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs*., 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence). However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law."

*Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II. Disability Determination

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. §§ 404.1520(b), 416.920(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id.* §§ 404.1520(c), 416.920(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does have at least one severe impairment, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id.* §§ 404.1520(d), 416.920(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, *id.* §§ 404.1509, 416.909, the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id.* §§ 404.1520(e), 416.920(e).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work. *Id.* §§ 404.1520(f), 416.920(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id.* §§ 404.1520(g), 416.920(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

### I. The ALJ's Decision

In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. §§ 404.1520 and 416.920. Initially, the ALJ determined that Plaintiff last met the insured status requirements of the Act through September 30, 2020. (Dkt. 3-1 at 21). At step one, the ALJ determined that although Plaintiff engaged in substantial gainful activity during several quarters, there had been a continuous 12-month period during which he did not engage in substantial gainful work activity. (*Id.*).

At step two, the ALJ found that Plaintiff suffered from the severe impairments of: degenerative changes in cervical spine, with radiculopathy; degenerative disc disease in the lumbar spine with radiating pain; degenerative changes in thoracic; sciatica; and left

hip impingement. (*Id.*). The ALJ further found that Plaintiff's medically determinable impairments of right arm laceration, right finger laceration, left shoulder pain, and depression were non-severe. (*Id.* at 21-22).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing. (*Id.* at 23). The ALJ particularly considered the criteria of Listings 1.15, 1.16, and 1.18 in reaching his conclusion. (*Id.*).

Before proceeding to step four, the ALJ determined that Plaintiff retained the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), with the following limitations:

> except he can lift and carry 15 pounds occasionally and 10 pounds frequently; standing/walking 6 hours, and sitting 6 hours total per eight-hour day, requires a sit/stand option that allows for changing position every 45 minutes for up to 5 minutes, without leaving the workstation. He cannot climb a rope, ladder, or scaffold; cannot balance on narrow, slippery, or moving surface, and cannot crawl. He can frequently finger and handle. He can occasionally reach from the shoulder; and he can frequently reach from the elbow (table work, counters). He can occasionally stoop, crouch, climb stairs or ramps, and kneel. He can occasionally push and pull.

(*Id.*).

At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. (*Id.* at 29). At step five, the ALJ relied on the testimony of a vocational expert ("VE") to conclude that, considering Plaintiff's age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that Plaintiff could perform, including the representative occupations of furniture rental consultant, call out

operator, and surveillance systems monitor. (*Id.* at 29-30). Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act. (*Id.* at 31).

## II. Remand of this Matter for Further Proceedings is Necessary

Plaintiff asks the Court to reverse or, in the alternative, to remand this matter to the Commissioner, arguing that the ALJ used his own lay interpretation of the raw medical record and failed to properly assess the medical opinion evidence in crafting the RFC. For the reasons set forth below, the Court finds that the RFC is not supported by substantial evidence, and this error necessitates remand for further proceedings.

In deciding a disability claim, an ALJ is tasked with "weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013). While an ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in his decision," *id.*, an ALJ is not a medical professional, and therefore he "is not qualified to assess a claimant's RFC on the basis of bare medical findings," *Ortiz v. Colvin*, 298 F. Supp. 3d 581, 586-87 (W.D.N.Y. 2018) (citation modified). At bottom, "[a]n RFC finding is administrative in nature, not medical." *Curry v. Comm'r of Soc. Sec.*, 855 F. App'x 46, 48 n.3 (2d Cir. 2021) (finding it was proper for the ALJ "pursuant to his statutory authority . . . [to] consider[ ] the medical and other evidence in the record in its totality to reach an RFC determination"); *see also Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8 (2d Cir. 2017) ("Where . . . the record contains sufficient evidence from which an ALJ can assess

the claimant's residual functional capacity, a medical source statement or formal medical opinion is not necessarily required." (citation modified)). In other words:

> An ALJ is prohibited from 'playing doctor' in the sense that 'an ALJ may not substitute his own judgment for competent medical opinion. . . .' This rule is most often employed in the context of the RFC determination when the claimant argues either that the RFC is not supported by substantial evidence or that the ALJ has erred by failing to develop the record with a medical opinion on the RFC.

*Quinto v. Berryhill*, No. 3:17-CV-00024 (JCH), 2017 WL 6017931, at *12 (D. Conn. Dec. 1, 2017) (citation modified).

Here, the RFC adopted a specific sit/stand option that allows for changing position every 45 minutes for up to 5 minutes without leaving the workstation. To be sure, "an RFC determination, even one containing highly specific limitations, is not fatally flawed merely because it was formulated absent a medical opinion or specific limitation." *Tiffany L. v. Comm'r of Soc. Sec.*, No. 1:20-CV-0677 (WBC), 2021 WL 3145694, at *4 (W.D.N.Y. July 26, 2021) (citing *Cook v. Comm'r of Soc. Sec.*, 818 F. App'x 108, 109-10 (2d Cir. 2020)). Accordingly, to the extent Plaintiff's argument is premised on the ALJ affording Plaintiff a sit/stand option that allows for changing position every 45 minutes for up to 5 minutes in the absence of a medical opinion assessing that very same limitation, that argument is not supported by the law, and courts have previously rejected it on several occasions. *See, e.g., Michael K. v. Comm'r of Soc. Sec.*, No. 1:20-CV-1467-DB, 2022 WL 3346930, at *10 (W.D.N.Y. Aug. 12, 2022) ("just because there is no explicit opinion or subjective complaint that mirrors an RFC limitation does not mean there was an error"); *Jennifer O. v. Comm'r of Soc. Sec.*, No. 1:20-CV-1474 (WBC), 2022 WL 2718510, at *4 (W.D.N.Y.

July 13, 2022) ("[A]n RFC determination, even one containing highly specific limitations, is not fatally flawed merely because it was formulated absent a medical opinion.").

But here, not only is there a lack of specific medical opinion evidence consistent with the RFC, notably missing from the ALJ's decision is an explanation of how he assessed this highly specific limitation. The only medical opinion evidence containing a discussion of a sit/stand and position change limitation came from Zachary Suter, M.D., Plaintiff's primary care physician, who opined that greater limitations than those set forth in the RFC were warranted.

The ALJ explained his reasons for affording the opinions of Dr. Suter limited weight.[2] Specifically, Dr. Suter provided several opinions prior to the alleged onset date

---

[2] Because Plaintiff's claim was filed before March 27, 2017, the ALJ was required to apply the treating physician rule, under which a treating physician's opinion is entitled to "controlling weight" when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record[.]" 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

Under the treating physician rule, if the ALJ declines to afford controlling weight to a treating physician's medical opinion, he or she "must consider various factors to determine how much weight to give to the opinion." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) (internal quotation marks omitted). These factors include:

> (i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion.

*Id.* Whatever weight the ALJ assigns to the treating physician's opinion, she must "give good reasons in [her] notice of determination or decision for the weight [she gives to the] treating source's medical opinion." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see also Harris v. Colvin*, 149 F. Supp. 3d 435, 441 (W.D.N.Y. 2016) ("A corollary to the treating physician rule is the so-called 'good reasons rule,' which is based on the regulations specifying that 'the Commissioner "will always give good reasons"' for the weight given

in response to requests from Plaintiff in which Dr. Suter opined that Plaintiff had lifting restrictions of over 30 pounds (Dkt. 3 at 756, 880) and an inability to work between August 2014 and December 2016 (*id.* at 756, 889). In giving the opinions little weight, the ALJ stated:

> Many of these appear to be at [Plaintiff's] request; when he wants to return to work Dr. Suter clears him, and when he wants to be taken out of work, Dr. Suter states that he cannot work. Therefore, they are not supported by objective evidence, rather they are based on subjective reporting. They are also from prior to the period at issue and as such, they are given little weight.

(Dkt. 3-1 at 28).

On May 24, 2019, Dr. Suter completed a medical opinion questionnaire. (Dkt. 3 at 1122-26). In it, he opined that Plaintiff's lower back pain was an 8 to 9 when severe, he suffered from left leg numbness, and his symptoms are frequently severe enough to interfere with the attention and concentration needed to perform even simple work tasks. (*Id.* at 1122-23). He opined that Plaintiff could sit or stand/walk about 2 hours in an 8-hour working day and must walk for 15 minutes every 60 minutes. (*Id.* at 1124). Dr. Suter opined that Plaintiff needed to take unscheduled breaks and shift positions at will from sitting, standing, or walking. (*Id.*). The ALJ gave his opinion little weight as well, explaining:

> This opinion is given little weight because the contemporaneous treatment notes from this date indicate that Dr. Suter thinks [Plaintiff] could do some type of work with restrictions but does not give clear limitations. [Plaintiff] indicated that he could work if he took a break every hour to walk (Exhibit 18F). Moreover, the assessed limitations do not appear to be based on

---

to a treating source opinion." (quoting *Halloran*, 362 F.3d at 32)). "Those good reasons must be supported by the evidence in the case record, and must be sufficiently specific. . . ." *Harris*, 149 F. Supp. 3d at 441 (internal quotation marks omitted).

> objective clinical findings, but rather, [Plaintiff's] subjective statements regarding his limitations.

(Dkt. 3-1 at 28).

Similarly, on April 8, 2021, Dr. Suter completed a medical opinion questionnaire in which he opined that Plaintiff could sit for 5 minutes at a time, stand for 30 minutes at a time, and sit and stand/walk for about 2 hours in an 8-hour working day. (Dkt. 3-1 at 11-14). He opined that Plaintiff needed periods of walking around, at least 30 minutes for 5 minutes, and shifting positions at will. (*Id.* at 13). The ALJ also afforded this opinion little weight, explaining:

> This opinion is given little weight because it is inconsistent with Dr. Suter's own treatment notes, which indicate that [Plaintiff's] back pain improved following the surgery and with physical therapy. Additionally, I find that Dr. Suter's opinion is not consistent with [Plaintiff's] work activity and lack of ongoing treatment as [Plaintiff] has not been seen for his low back since February 2022. Also, there is no support in the record for finding that [Plaintiff] has such extreme limitations in the right arm.

(*Id.* at 28).

Here, even assuming that the ALJ's assessment of Dr. Suter's opinions was proper, it still leaves unclear how the ALJ ultimately fashioned the specific limitations contained in the RFC, nor is his discussion of the medical treatment records sufficient for the Court to glean this determination. *Cheek v. Comm'r of Soc. Sec.*, No. 1:18-CV-01455 EAW, 2020 WL 2028258, at *4 (W.D.N.Y. Apr. 28, 2020) ("Where the record primarily discusses a plaintiff's impairments, symptoms, and treatment, but does not shed light on the plaintiff's physical limitations, the ALJ may not rely on the record in determining the plaintiff's RFC."). None of the other opinion evidence cited and discussed by the ALJ speaks to Plaintiff's specific limitation for alternating between sitting and standing for a

set period of time without leaving the workstation. *Marie C. v. Comm'r of Soc. Sec.*, No. 6:23-CV-6153-LJV, 2026 WL 380383, at *3 (W.D.N.Y. Feb. 11, 2026) ("And when a medical provider opines about a highly specific limitation, the ALJ may not choose some lesser limitation without a medical opinion or some other evidence that supports that limitation."). And the RFC limitation for alternating between sitting and standing is at odds with Plaintiff's hearing testimony, so it cannot be presumed that this is the basis for the ALJ's determination. *See Joshua K. v. Comm'r of Soc. Sec.*, No. 19-CV-66-FPG, 2021 WL 235886, at *2-3 (W.D.N.Y. Jan. 25, 2021) (remand required where the ALJ did not "point to any evidence in the record suggesting why Plaintiff would be off task for this specific percentage of time," and explaining that "[s]pecific RFC assessments, like percentage of time off-task, must be based on evidence in the record," and further explaining that generalizations pointed to by the Commissioner, including that the plaintiff had normal attention and concentration examination, engaged in many activities, and attended college, "were [not] included in the ALJ's decision as support for the specific off task assessment nor do they translate into a finding that Plaintiff would be off task five percent of the day"). While the Commissioner argues that Plaintiff's documented substantial gainful work and credibility undermines his disability claim and supports the ALJ's analysis, the ALJ did not expressly rely on those facts in crafting the sit/stand and position change limitation. These generalized arguments may support the ALJ's determination, but they amount to speculative reasons that cannot be clearly found in the ALJ's decision. The caselaw is clear that the Court cannot affirm the ALJ's decision based on "a post hoc rationalization that is not apparent from the face of the ALJ's decision."

*Hall v. Colvin*, 37 F. Supp. 3d 614, 626 (W.D.N.Y. 2014); *see also Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999) ("A reviewing court may not accept . . . counsel's post hoc rationalizations for agency action." (citation modified)).

In short, it is unclear to the Court how the ALJ settled on a sit/stand option that allows for changing position every 45 minutes for up to 5 minutes without leaving his workstation, and this lack of clarity is particularly problematic given that at the administrative hearing, when the ALJ presented hypotheticals to the VE containing different off-task limitations, the VE explained that additional breaks each hour of 15 minutes would exceed the off-task tolerance and that an off-task limitation of more than ten percent would be considered work preclusive. (*See* Dkt. 3-1 at 68-69); *see also Elder v. Comm'r of Soc. Sec.*, No. 18-CV-1196, 2019 WL 6320355, at *5-6 (W.D.N.Y. Nov. 26, 2019) ("At best . . . the ALJ's conclusion comes from whole cloth. At worst, the conclusion responds to the vocational expert's testimony that an off-task behavior restriction of six minutes per hour—that is, one more minute of off-task behavior per hour—would be work preclusive."). As a result, any error is harmful and remand is warranted. *Marie C.*, 2026 WL 380383, at *4 ("In sum, the ALJ erred in formulating a specific sit/stand limitation without explaining where, if anywhere, that limitation came from. . . . And because that error was not harmless, remand is required.").

On remand, should the ALJ again assess a sit/stand option with change of position of specific duration requirement, he should identify evidence in the record supporting his conclusion in that respect and provide an explanation for that determination.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (Dkt. 5) is granted to the extent that the matter is remanded for further administrative proceedings, and the Commissioner's motion for judgment on the pleadings (Dkt. 9) is denied. The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated: September 29, 2026
Rochester, New York